W.R. GRACE COMPANY, d/b/a Handy Dan, Appellant,

v.

SCOTCH CORPORATION, INC., Appellee.

No. 3–87–249–CV.

Court of Appeals of Texas, Austin.

June 8, 1988.

Rehearing Denied Aug. 10, 1988.

---

Larry G. Black, Sarah C. Loud, Bankston, Wright & Greenhill, Austin, for appellant.

David E. Chamberlain, Timothy B. Poteet, Lea & Chamberlain, Austin, for appellee.

Before POWERS, BRADY and CARROLL, JJ.

POWERS, Justice.

W.R. Grace Company appeals from a summary judgment that it take nothing by its suit for indemnity against Scotch Corporation, Inc. We will reverse the judgment and remand the case to the trial court for proceedings not inconsistent with our opinion.

## THE CONTROVERSY

Scotch manufactures and sells at wholesale containers of drain opener bearing the brand name "Triple Strength Instant Plumber." The contents consist of a solution of concentrated sulfuric acid. Grace purchased a quantity at wholesale and sold one of the containers to Novella Marie Turman. Grace delivered the container to Turman in the unopened, unaltered condition in which Grace received it from Scotch. Turman sustained burns when the contents splashed on her as she opened the container.

Turman demanded compensation of Grace, who in turn demanded that Scotch defend against Turman's claim and indemnify Grace in the event Grace sustained any loss by reason of the claim. Scotch did neither, whereupon Grace settled and compromised Turman's claim in a written contract, paying Turman $10,000.00 as required by the agreement.

Praying for additional compensation, Turman sued Scotch alleging a single cause of action: that the product manufactured by Scotch was not of "merchantable quality," as impliedly warranted in law, and that its defective condition caused Turman's injuries.[1] While Turman's pleading is inartful, it plainly does not allege a cause of action for negligence or for strict liability

---

1. Turman sued Scotch alleging a cause of action described as follows:

    Plaintiff would show that Defendant breached an implied warranty to Plaintiff that the Drain Cleaner it sold and delivered and plaintiff purchased in due course would be of "merchantable quality," as that term is defined in the Texas Business and Commerce Code, particularly Section 2.314, et seq, with emphasis on the Deceptive Trade Practices Act ("DPTA") [sic] provisions, and applicable case law. That such breach was the sole proximate cause or, alternatively, a substan-

    tial concurring proximate cause of Plaintiff's consequential damages, to-wit: [lost wages, pain and suffering, mental anguishment resulting from permanent disfigurement, and reasonable attorneys fees made necessary by Scotch's failure to respond to Plaintiff's due written notice of the foregoing facts].

    We interpret Turman's allegations as alleging a cause of action for breach of implied warranty, and not a cause of action for negligence or strict liability based on Scotch's sale of an unreasonably dangerous product.

based upon the sale of an unreasonably dangerous product.

Grace intervened in the suit, alleging in its first amended original petition that it was entitled to indemnity from Scotch for the $10,000.00 Grace had paid to Turman. As grounds for its claim, Grace averred that Scotch had impliedly warranted to Grace the "merchantable quality" of the product; that the product was in fact not fit or proper for use by a consumer and lacked a proper label; and that Grace had no knowledge of these defects, relied on Scotch's implied representations, and stored and held the product at all times "in a manner necessary to maintain its fitness for ... use by consumers." In a first supplemental petition, Grace alleged that its claim for indemnity rested on the additional ground that Scotch was strictly liable for manufacturing and placing in commerce "an ultrahazardous and defective product which resulted in severe injuries to" Turman, and although Grace "was the retailer of the product [Grace] *was a mere conduit for the defective product and was in no way independently culpable for the injuries*" sustained by Turman. (emphasis added). This is the first and only allegation in the case of a theory of strict liability based on the sale of an unreasonably dangerous product.

In answer to Grace's suit for indemnity, Scotch interposed the following: a general denial; a plea that *Turman* misused the product and failed to read and obey the warnings and instructions displayed on the product; and a plea that *Grace* was "negligent" in unspecified ways, which *negligence* was the "sole cause" or "a contributing cause" of Turman's injuries. Scotch did not allege any *other* affirmative defense to Grace's claim for indemnity respecting the $10,000.00 it had paid to Turman before she filed her suit against Scotch.

The pleadings having reached the state just described, Scotch moved for summary

judgment that the intervenor Grace take nothing by its suit against Scotch for indemnity in the amount of $10,000.00. Subsequent passages in Scotch's motion suggest the grounds intended by the prayer for summary judgment: Grace had settled and compromised Turman's claim by obtaining from her a release of all her claims against Grace; no judgment had ever been rendered by any court against Grace and in favor of Turman; and "[a]s a settling party, [Grace] has no claim against a non-settling party such as [Scotch] as a matter of law."

The trial court granted Scotch's motion for summary judgment, stating only that it was "well taken and should be in all things granted...." From this judgment, Grace appeals.

## DISCUSSION AND HOLDINGS

By its motion for summary judgment, Scotch assumed the negative burden of showing, as a matter of law, that Grace had no cause of action against Scotch *for indemnity*—the *sole* cause of action pleaded by Grace. 4 McDonald, Texas Civil Practice § 17.26.2, at 159 (1984). Summary judgment on Scotch's motion was proper only on the basis that the summary-judgment record showed:

> [T]here is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.

Tex.R.Civ.P.Ann. 166a (Supp.1988).[2] In the present context, we are required to determine whether the summary-judgment record shows as a matter of law that Grace's settlement and compromise with Turman extinguished Grace's cause of action against Scotch for indemnity. Grace contends on appeal that the summary-judgment record does not support the judgment. We agree. The summary judgment

---

**2.** The "summary-judgment record" consists of those documents that the court may consider in determining a motion for summary judgment: deposition transcripts, interrogatory answers, and other discovery responses referenced or set

forth in the motion or response; and pleading admissions, affidavits, stipulations of the parties, and authenticated or certified public records. *See* Tex.R.Civ.P.Ann. 166a(c) (Supp. 1988).

was erroneous for each of the two reasons now to be discussed.

■ *Summary Judgment Improper Because Granted on An Affirmative Defense Not Alleged in Scotch's Answer.* The sole ground urged by Scotch in its motion for summary judgment was that Grace could not recover indemnity from Scotch, as a matter of law, because Grace had settled and compromised Turman's claim before judgment by paying her $10,-000.00 and obtaining a release from her. As stated previously, the *only* affirmative defense interposed by Scotch against Grace's claim for indemnity was an allegation that Grace was *negligent,* in unspecified ways, in its sale and delivery of the product to Turman. Scotch did *not* plead that Grace's settlement and compromise, with Turman, extinguished Grace's action for indemnity against Scotch—the *only* ground urged in Scotch's motion for summary judgment and the *only* ground upon which that judgment might rest.

■ "In pleading to a preceding pleading, a party shall set forth *affirmatively* " certain specified defenses, including "accord and satisfaction," "release," and "any other matter constituting an avoidance or affirmative defense." Tex.R.Civ.P.Ann. 94 (1979) (emphasis added). "Affirmative defenses," as opposed to a defendant's denials, are any propositions that a defendant may interpose to defeat the plaintiff's *prima facie* case. They do not rebut any factual propositions asserted in the plaintiff's case, but open the way for the defendant to adduce evidence establishing an *independent* reason why the plaintiff may not recover. *Hays Cons. Ind. Sch. Dist. v. Valero Trans. Co.,* 645 S.W.2d 542, 546 (Tex.App.1983, writ ref'd n.r.e.); 2 McDonald, *supra,* § 7.34.1 at 220 (1982). Scotch obviously based its motion for summary judgment solely on an "affirmative defense"—that Grace's settlement and compromise with Turman extinguished the retailer's indemnity claim as a matter of law. Scotch failed, however, to interpose this affirmative defense in pleading to Grace's petitions, as Rule 94 required.

■ Summary judgment may not be granted on the basis of an affirmative defense not pleaded by the movant, *even if* matters contained *in the motion itself* raise and support the defense. *See De-Bord v. Muller,* 446 S.W.2d 299, 301 (Tex. 1969); *Fort Bend Independent School Dist. v. Weiss,* 570 S.W.2d 241, 244 (Tex. Civ.App.1978, no writ). This must be the case because our rules of practice require that "[t]he judgment ... shall conform to the pleadings" as well as "the nature of the case proved and the verdict, if any, ..." Tex.R.Civ.P.Ann. 301 (Supp.1988). Grace did not waive the defect under the provisions of Tex.R.Civ.P.Ann. 67 (1979) (trial on issues not raised by pleadings binding when issues fully litigated by express or implied consent) because Rule 67 does not apply to a summary judgment awarded, as it was in this case, on the basis of an unpled "affirmative defense." *Sawyer v. City of San Antonio,* 149 Tex. 408, 234 S.W.2d 398, 403 (1950); *Aycock v. City of Fort Worth,* 371 S.W.2d 712, 716 (Tex.Civ. App.1963, writ ref'd n.r.e.).

Because Scotch failed to plead the affirmative defense upon which it recovered summary judgment, we hold the trial court erred in awarding Scotch that judgment summarily as a matter of law and undisputed fact.

*Summary Judgment Improper Because Scotch Failed to Establish the Absence of Any Genuine Issue of Fact and Its Entitlement to Judgment as a Matter of Law.* We turn now to consider the issue of law upon which Scotch recovered summary judgment, pursuant to its motion, and the issues of fact material to that question of law. We refer, of course, to Scotch's assertion in its motion for summary judgment that Grace's settlement and compromise barred its cause of action for indemnity.

In *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984), the court dealt at length with the law relating to apportioning liability between two or more *tortfeasors* who are alleged or found to be *jointly liable* to the plaintiff on theories of negligence or strict liability. The court

adopted a system of "comparative causation." *Id.* at 427. In addition, the court considered the effect of settlement by one such tortfeasor as it might affect the plaintiff's right to recover from the tortfeasor who had not settled. *Id.* at 429–32. In that connection, the court stated:

> Comparative causation does not affect the right of a retailer or other member of the marketing chain to receive *indemnity* from the *manufacturer* of the defective product when the retailer or other member of the marketing chain is *merely a conduit for the defective product and is not independently culpable....*

*Id.* at 432 (emphasis added).

The emphasized portions of the foregoing quotation are, of course, almost the very words that Grace pleaded in its first supplemental petition as a basis for recovering indemnity from Scotch. Under *Cessna,* then, it is quite clear that Grace *would* be entitled to indemnity from Scotch *if* Grace is able to establish that Scotch manufactured a defective product that injured Turman and that Grace was the retailer who was "merely a conduit for the defective product and ... not independently culpable...." In seeking to defeat this ground for Grace's indemnity claim, Scotch alleged in its motion for summary judgment (but not in its pleading responding to Grace's pleading for indemnity) that Grace's settlement with Turman extinguished the indemnity claim as a matter of law. As discussed previously, Scotch recovered summary judgment solely on that ground.

■ In support of its theory, Scotch cites judicial decisions that apply to causes of action for contribution, rather than a cause of action for indemnity such as that pleaded by Grace, or decisions that apply to asserted causes of action where the indemnity claimant had been found independently culpable. *See, e.g., Beech Aircraft Corp. v. Jinkins,* 739 S.W.2d 19 (Tex.1987) (manufacturer and supplier of aircraft and equipment, sued by passenger on theories of negligence and products liability, extinguished their right to recover *contribution* from pilot on theory of negligent operation when they settled before judgment with passenger, even though they purported to purchase passenger's entire cause of action); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816 (Tex.1984) (operator of aircraft, sued by plaintiffs on negligence theory along with manufacturer and previous owner who were sued on theories of strict liability and negligence, respectively, not entitled to indemnity *or* contribution, as a matter of law, where jury assigned 75% of fault to *operator's negligence* ); *see also International Proteins Corp. v. Ralston–Purina Company,* 744 S.W.2d 932 (1988); *Texas Distributors, Inc. v. Texas College and C.M.E. Churches,* 31 Tex.Sup.Ct.J. 156 (December 16, 1987). These decisions do not suggest that a *non-culpable* retailer's claim for *indemnity* against the manufacturer of a defective product is extinguished by a settlement agreement.

■ Thus, the common-law right of indemnity, expressly recognized in *Cessna,* has not been overruled as Scotch implies. Scotch did not establish, and did not purport to establish, as a matter of law, that Grace cannot recover indemnity because it did not meet the *Cessna* requirements of being merely a conduit for the product who was not "independently culpable" for the injuries that it caused. Instead, Scotch merely disregarded in its motion the difference between "contribution" and the right of "indemnity," as the latter is recognized in *Cessna.*[3]

---

**3.** "Contribution" and "indemnity" are similar in that each designates a legal theory under which one may recover money, paid by him to an injured plaintiff, from another who is also legally liable for the plaintiff's injuries. This similarity has produced judicial opinions that appear to use the words "contribution" and "indemnity" as synonyms, causing more than a little confusion in understanding those opinions. The two words actually imply legal theories and consequences that are quite different and distinct. One primary difference lies in the amount recoverable under one theory or the other. "Indemnity" contemplates "the payment of *all* of plaintiff's damages by one tortfeasor to another tortfeasor who has paid it to the plaintiff"; whereas "contribution" contemplates "the payment by each tortfeasor of his *proportionate share* of the plaintiff's damages to any other

As a final matter, Scotch contends that Grace failed to adduce "evidence" establishing its claim to be a non-culpable retailer, thereby waiving its claim for indemnity on that ground because "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex.R.Civ.P.Ann. 166a(c) (Supp. 1988). We reject Scotch's argument.

The quoted portion of Rule 166a prohibits the raising of a *new* ground for reversal, for the first time, on appeal. Grace averred in its first supplemental petition that it was a non-culpable retailer, a mere conduit for the defective product, and therefore entitled to indemnity from Scotch as the manufacturer. The burden lay upon the movant Scotch to *disprove* this ground, as a matter of law, in order to recover summary judgment. Scotch did not even attempt to negate the material fact issues implicit in Grace's allegation that it was a non-culpable retailer. Instead, Scotch was content to urge its motion solely on the erroneous legal theory that Grace's settlement with Turman extinguished as a matter of law Grace's right to indemnity. Scotch failed therefore to establish its right to a judgment as a matter of law.

■ Scotch also contends that Grace may not recover on a claim for indemnity because it did not allege or show that its payment of $10,000.00 was made in obedience to a preexisting judgment. This is an incorrect theory for the right to indemnity accrues with the good-faith payment of a reasonable sum, before judgment, in order to obtain a settlement and compromise. We hold that such a payment in those circumstances is a sufficient expense or loss upon which an indemnitee may base his claim for indemnification.[4] *Cf. Mitch-*

---

tortfeasor who has paid *more than his proportionate share." General Motors Corp. v. Simmons,* 558 S.W.2d 855, 859 (Tex.1977) (emphasis added).

A second important difference lies in the fact that the two theories rest upon different duty relationships.

> When there are two tortfeasors, either of whom are liable to an injured third person, but one of whom has breached a duty which he owed both to his co-tortfeasor and to the injured third person, then the tortfeasor who, to his co-tortfeasor, is blameless, should be allowed indemnity.

Hodges, *Contribution and Indemnity Among Tortfeasors,* 26 Tex.L.Rev. 150, 162 (1948).

4. A right of action for indemnity may rest upon an *express contract* for indemnification, contained in a variety of instruments ranging from leases to mortgages to insurance contracts. When a cause of action accrues against the indemnitor under such a contract, and when it might be extinguished by the indemnitee's actions, are matters of proper contract construction. *See, e.g., Gulf, Colorado & Santa Fe Railway Co. v. McBride,* 159 Tex. 442, 322 S.W.2d 492 (Tex.1959) (where indemnitor contracted to reimburse indemnitee for all sums it may pay or be compelled to pay, indemnitee entitled to make reasonable settlement with injured party in good faith without judicial ascertainment of liability, indemnitor having denied *any* obligation under the contract).

We do not, in the present case, deal with such an express contract for indemnification. Rather, the present case involves an *implied contract* for indemnification—specifically, a contract implied in law or equity that gives a right of indemnification to one who is compelled to pay for another's wrong when the latter ought to pay therefor. The implication may arise in any number of circumstances. *See, e.g., City of Amarillo v. Stockton,* 158 Tex. 275, 310 S.W.2d 737 (1958) (city entitled to indemnity from contractor if city becomes liable for injury caused by contractor's work). Generally speaking, however, the right of indemnity exists when the injury results from the breach of a duty that the indemnitor owed *both* the injured person and the indemnitee.

In determining the effect of the indemnitee's pre-judgment settlement and compromise of the plaintiff's claim, we are not assisted by any contract language, of course, because the contract is one implied in law or equity. We have found no Texas judicial decisions that expressly hold or state that an indemnitee (under an implied contract for indemnification) extinguishes his right to indemnification if he pays the injured person before judgment by way of settlement and compromise. The contrary would appear to be the case in other jurisdictions, so long as the indemnitee pays a reasonable sum in good faith. *See generally* 41 Am.Jur.2d *Indemnity* § 33, at 723 (2d ed. 1968); 42 C.J.S. *Indemnity* § 25, at 603–604 (1944). The Texas decisions are vague on the point. *See, e.g., Shell Petroleum Corp. v. Tippett,* 103 S.W.2d 448, 452 (Tex.Civ.App.1937, writ ref'd) ("... the right to indemnity does not arise until the *obligation* is discharged by the one ... secondarily liable.") (emphasis added).

In the present case, the record shows that Grace notified Scotch of Turman's claim and demanded that Scotch defend against it and hold Grace harmless. Scotch did neither, leaving Grace to

*ell's, Inc. v. Friedman,* 157 Tex. 424, 303 S.W.2d 775, 779 (Tex.1957) (indemnity based on express contract); *Sun Oil Co. v. Renshaw Well Serv., Inc.,* 571 S.W.2d 64 (Tex.Civ.App.1978, writ ref'd n.r.e.) (indemnity based on express contract); *see generally* 41 Am.Jur.2d *Indemnity* § 33, at 723 (2d ed. 1968); 42 C.J.S. *Indemnity* § 25, at 603–604 (1944).

For the reasons indicated above, we reverse the judgment below and remand the cause to that court for proceedings not inconsistent with our opinion.

make the best resolution it could in its own protection, apparently on the theory that Grace had no right to indemnity. In our view, it would be unjust if Scotch now is permitted to concede Grace's right to indemnity but insist that it was extinguished by a pre-judgment payment, by way of settlement and compromise, when Scotch does not contend it was made in bad faith or that the sum paid was unreasonable. We refer, by way of analogy, to *Gulf, Colorado & Santa Fe Railway Co. v. McBride,* 159 Tex. 442, 322 S.W.2d 492 (1959), involving the right of indemnity arising from an express contract.