PITTMAN, Judge.
On January 27, 1999, Sherman International Corporation sued Summit General Contractors, Inc.; Flint River Development Corp., Inc.; Chuck Sisco; and Myron Wilson, alleging breach of contract and seeking to perfect a materialman’s lien. In their answer, the defendants generally denied the allegations of the complaint. On June 10, 1999, the parties requested that the trial court place the case on its administrative docket because the parties had entered into a settlement agreement; the trial court granted the request and placed the case on the administrative docket. On February 26, 2001, Sherman filed a motion to reassign the case to the trial docket and to set the case for trial. On October 1, 2001, Sherman filed a motion to enforce the settlement agreement between the parties or, alternatively, for a judgment on the pleadings. The next day, the defendants filed a motion in opposition to the motion to enforce the settlement agreement; Wilson and Sisco also filed a motion for a summary judgment. Each party filed a brief in support of its own motion and in opposition to the other parties’ motions. On October 30, 2001, the trial court granted Sherman’s motion for a judgment on the pleadings as to the two corporate defendants, Summit and Flint River, and granted Wilson and Sisco’s motion for a summary judgment. Sherman appeals.
Sherman first contends that the trial court erred in not enforcing the settlement agreement entered into between the parties. Secondly, Sherman contends the trial court erred by not barring Wilson and Sisco from asserting the affirmative defense of forgery in their motion for a summary judgment. We disagree with both contentions, and we affirm.
Sherman contends that the trial court erred by failing to enforce the settlement agreement.
In Mays v. Julian LeCraw & Co., 807 So.2d 551 (Ala.Civ.App.2001); this court stated:
“ ‘The law in Alabama is clear in that agreements made in settlement of litigation are as binding on parties thereto as any other contract. A settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced.
“ ‘When parties who are sui juris make a final settlement between themselves, such settlement is as binding on them in many respects as a decree of the court. However, such settlement may be opened for fraud, accident, or mistake.’ ”
807 So.2d at 554 (emphasis added)(quoting Nero v. Chastang, 358 So.2d 740, 743 (Ala.Civ.App.1978)).
The settlement agreement at issue in the present case is very short; it reads, in its entirety, as follows:
“The plaintiff acknowledges that it has received $31,268.60 in partial settlement of its claims in the above referenced lawsuit. The defendants agree to pay the balance of $15,631.96 in installments, the amount of which is to be determined by multiplying the cost of each lot in the Riverbend I and Stillwater Downs III subdivisions by 1.28% as each lot is sold. Such payments are to continue until the aforesaid balance plus simple interest at 8% per annum is paid. The liens and personal guarantees, if any, are to remain in force until plaintiffs claim is paid in full, as set out herein, at which time this action will be dismissed with prejudice. Plaintiff agrees that upon *265 payment of the percentage of the sale price, as set out above, it will release the lot or lots sold from its lien.
“The parties move the court, in consideration of the foregoing settlement agreement, to place this case on the administrative docket until it can be dismissed in accordance with the terms of this agreement.”
The settlement agreement did not compromise the amount of the debt owed by the defendants; it simply provided a manner of payment of that debt. Specifically, the parties agreed that, as each lot in the subdivisions was sold by the defendants, 1.28% of the sales price for that lot would be applied against the outstanding balance owed by the defendants. The settlement agreement did not provide that the action would be dismissed based upon the exchange of promises, but instead specifically provided that the action was to remain pending until it could “be dismissed in accordance with the terms of this agreement.” Thus, the agreement clearly contemplated that the underlying claims against the defendants would remain pending unless and until such time as the debt at issue in those claims was paid through the mechanism described in the agreement.
Unfortunately for the parties to this action, however, the lots in the subdivisions were not sold in the regular course of business. Instead, the defendants defaulted on loans secured by mortgages on the lots, and those mortgages were foreclosed upon.
As a result of the foreclosure, Sherman filed a “motion to enforce settlement agreement or in the alternative motion for judgment on the pleading” to which it attached a copy of the above-quoted settlement agreement. The motion essentially set forth the above-described developments and concluded by requesting that the court “enter an Order enforcing the Settlement Agreement and requiring Defendants ... to pay the remaining amounts due Sherman International Corporation, or in the alternative, enter judgment against the Defendants ... for those amounts due Sherman.”
With no evidence before it other than a copy of the settlement agreement, the trial court was asked to assess the facts, including the agreed-upon fact of foreclosure, construe the settlement agreement, and determine whether the settlement agreement was enforceable. The trial court did this. The court interpreted the settlement agreement as placing the action and the claims brought by Sherman against the defendants in that action “on hold” pending the anticipated sale of the lots. Specifically in this regard, the trial court found:
“1. The ‘Settlement Agreement’ was contingent upon the sale of lots and was to be paid from the sale of residential lots in Riverbend I and Stillwater Downs III Subdivisions.
“2. The defendants have complied with the provisions of the settlement agreement.
“3. The settlement agreement did not enter a judgment against the defendants, but only placed the case on the administrative docket and preserved the rights of the plaintiff if any against the defendants should payment not be made.”
The record, though limited, fully supports these findings.
The trial court specifically noted that the settlement agreement was not the equivalent of a judgment against the defendants but, by having the case placed on the court’s administrative docket, preserved Sherman’s rights in the event that payments were not made in the manner prescribed in the agreement. In other *266 words, the trial court construed the settlement agreement as not intending to substitute the defendant’s contractual obligations under the settlement agreement for their underlying obligations, if any, which were the subject of the action filed by Sherman. The trial court also construed the settlement agreement to contemplate that the event that would trigger a 1.28% installment payment would be a “sale” of a lot in the normal sense of that term.
Sherman argues on appeal, however, that the settlement agreement also contemplated that a foreclosure would constitute a “sale” of the lots for purposes of triggering some payment obligation under the settlement agreement.[1] Other than a copy of the settlement agreement, itself, however, Sherman introduced no evidence to support such an interpretation of the settlement agreement. The plain language of the settlement agreement certainly does not lend itself to such an interpretation. Moreover, we find nothing in the record indicating that the plaintiffs even made this contract-interpretation argument to the trial court. We therefore cannot hold the trial court in error for construing the parties’ settlement agreement as it did. See Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212 (Ala.1990); Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992).
We do not find the terms of the settlement agreement to be ambiguous; therefore, it fell to the trial court to construe those terms. See Cabnetware, Inc. v. Birmingham Saw Works, Inc., 614 So.2d 1034, 1038 n. 2 (Ala.1993); BõWing Office Systems, Inc. v. Johnson, 744 So.2d 915, 918 (Ala.Civ.App.1999). The plain language of the settlement agreement supports the trial court’s reading and construction of the agreement. Thus, we do not hold the trial court in error for concluding that the particular installment method described in the settlement agreement for the satisfaction of Sherman’s claims was contingent on the actual sale of lots. The lots clearly would no longer be sold by the defendants because of the foreclosure, and the trial court could not enforce the settlement agreement.
The trial court realized that it was not the parties' intention, if the settlement agreement could not be consummated, that the defendants would be relieved of their underlying obligations. As the trial court aptly noted, under the settlement agreement, the action was expressly to remain pending to “preserve the rights of the plaintiff if any against the defendants should payment not be made” in the manner prescribed in the agreement. (Thus, in one sense, the trial court actually did enforce the settlement agreement because it awarded Sherman the very relief contemplated by the settlement agreement itself, i.e., reactivation of the action, in the event the installment payments prescribed by the settlement agreement could not be made.) The fact that the trial court went even further and not only reactivated the action but actually awarded the plaintiff a judgment on the pleadings surely is something about which the plaintiff cannot complain. Indeed, Sherman asked for this very relief as an alternative to its motion for enforcement of the settlement agreement. As to this issue we find no error on the part of the trial court.
Sherman’s second argument is that the trial court erred by not barring Wilson and Sisco from asserting the affirmative defense of forgery in their motion for a *267 summary judgment. Sherman contends that Wilson and Sisco are procedurally barred from denying that their signatures on the surety portion of the underlying contract are forgeries. Specifically, Sherman contends that forgery is an affirmative defense that must be pleaded in the defendant’s answer or else it is waived. Wilson and Sisco’s answer provided a general denial to the complaint; it did not include a specific affirmative denial.
Rule 8(c), Ala. R. Civ. P., states, in pertinent part:
“In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.”
Forgery is not one of the affirmative defenses listed in Rule 8(c). We find no previous Alabama case that specifically states whether forgery is an affirmative defense to a breaeh-of-contract claim.
A review of relevant caselaw in other jurisdictions shows general disagreement as to whether forgery constitutes an affirmative defense to a breach-of-contract claim. Some jurisdictions refer to the “affirmative defense of forgery” without disclosing whether forgery is an affirmative defense in their jurisdiction by statute or by a procedural rule. See, generally, Seaboard Sur. Co. v. Nigro Bros., 222 A.D.2d 574, 635 N.Y.S.2d 296 (1995); Domingue v. Dickinson, 611 So.2d 796 (La.Ct.App.1992); and Edwards v. Estate of Harrison, 235 Ill.App.3d 213, 601 N.E.2d 862, 176 Ill.Dec. 164 (1992). Some jurisdictions have held that forgery is an affirmative defense based specifically upon the authority of a state statute. See Suris v. Tropical Fed. Sav. & Loan Ass’n, 515 So.2d 1049, 1050 (Fla.Dist.Ct.App.1987)(noting that “forgery must be raised by specific allegation in an answer” and citing § 673.307, Fla. Stat. (repealed 1992)).
On the other hand, many jurisdictions analyze affirmative defenses in such a way that forgery would not constitute an affirmative defense. In the cases from those jurisdictions, there is a more elongated discussion of the reasoning for the court’s conclusions. The Texas appellate courts have consistently analyzed affirmative defenses in the following manner:
“ ‘Affirmative defenses,’ as opposed to a defendant’s denials, are any propositions that a defendant may interpose to defeat the plaintiffs prima facie case. They do not rebut any factual propositions asserted in the plaintiffs case, but open the way for the defendant to adduce evidence establishing an independent reason why the plaintiff may not recover.”
W.R. Grace Co. v. Scotch Corp., 753 S.W.2d 743, 746 (Tex.App.1988)(emphasis on “reason” added); see also Hays Consol. Independent School Dist. v. Valero Transmission Co., 645 S.W.2d 542 (Tex.App.1982). Additionally, in World Enterprises, Inc. v. Midcoast Aviation Services, Inc., 713 S.W.2d 606 (Mo.Ct.App.1986), the Missouri appellate court was faced with the question whether a contract provision limiting a party’s liability was an affirmative defense that should have been specifically pleaded. The reasoning and caselaw applied to analyze the contract provision are instructive:
“An affirmative defense is a defense which avers that even if the petition is true, the plaintiff cannot prevail because there are additional facts which permit the defendant to avoid legal responsibili *268 ty. The term ‘additional facts’ contemplates new matter, i.e., acts, transactions, or occurrences which do not form part of the original contract or transaction but those which have arisen since the plaintiffs cause of action came into existence.
“Since an affirmative defense by definition includes new matter or additional facts, Rule 55.08 [Mo.R.Civ.PJ requires such a defense to be pleaded in order to give notice to the plaintiff. If the plaintiffs cause of action never had a legal existence, however, the proper answer is a general denial.”
World Enterprises, 713 S.W.2d at 608-09 (footnote and citations omitted). In a footnote to the above discussion the Missouri appellate court specifically noted:
“Additional facts and new matter, when considered in the context of affirmative defenses, may be explained by the following example:
“ ‘[I]n an action for damages for nonperformance of a written contract, if the contract was valid, but had in some way been discharged, that would be new matter; but, if it was forged, the forgery would not be new matter and need not be pleaded. A showing of forgery would be a showing that the alleged cause of action never existed, and hence is fully covered by a simple denial.’
“Cushing v. Powell, 130 Mo.App. 576, 109 S.W. 1054, 1054 (1908).”
World Enterprises, 713 S.W.2d at 609 n. 3. We find the reasoning used by the Texas and Missouri appellate courts in the above-noted decisions to be highly persuasive.
Our own cases provide some guidance in the general area of what constitutes an affirmative defense. “An affirmative defense is defined as ‘new matter which, assuming the complaint to be true, constitutes a defense to it.’ ” Bechtel v. Crown Cent. Petroleum Corp., 451 So.2d 793, 795 (Ala.1984)(quoting Black’s Law Dictionary (rev. 5th ed.1979)). Accord 2A, J. Moore, Moore’s Federal Practice § 8.27 (2d ed,1982)(stating that an affirmative defense concerns matters outside the claimant’s prima facie case).
The averment in Sherman’s complaint that Wilson and Sisco individually guaranteed the contract cannot be assumed true if Wilson and Sisco’s defense is that their signatures to that contract were forged. Therefore, Wilson and Sisco’s assertion of a forgery is not an affirmative defense because it is not external to Sherman’s claims against them. Instead, whether Wilson and Sisco signed the contract in question is an essential internal element of Sherman’s claims. Thus, Wilson and Sis-co’s general denial of the complaint was sufficient to preserve their opportunity to assert the alleged forgeries at the summary-judgment stage and on appeal. See Ex parte Atmore Cmty. Hosp., 719 So.2d 1190, 1193 n. 1 (Ala.1998).
We find that the trial court committed no error in its disposition of Sherman’s motion to enforce the settlement agreement or, alternatively, for a judgment on the pleadings, and we find no error in the trial court’s refusal to bar Wilson and Sis-co from asserting the defense of forgery in their motion for a summary judgment. The judgment of the trial court is due to be affirmed.
AFFIRMED.
THOMPSON, J., concurs.
CRAWLEY, J., concurs in part and concurs in the result.
YATES, P.J., concurs in the result.

. Exactly what payment amount would be required is unclear, given the nature of a foreclosure.