SAMELLA EDWARDS, Plaintiff-Appellant, v. ESTATE OF CLARENCE HARRISON *et al.*,[1] Defendants-Appellees (Roosevelt Thomas, Appellant).

First District (2nd Division)   No. 1—90—0537

Opinion filed September 1, 1992.—Rehearing denied October 15, 1992.

[1]We note that although the estate of Clarence Harrison has been made a defendant, it was established at the trial level that no such estate was ever opened and that an appearance was entered on behalf of Sonjia Renee Harrison only.

William T. Rodeghier, of Chicago, for appellant Samella Edwards.

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for appellant Roosevelt Thomas.

Sachnoff & Weaver, Ltd., of Chicago (Stuart J. Chanen and Christine M. Bodewes, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Samella Edwards (Edwards) and Roosevelt Thomas (Thomas) appeal from the judgment of the circuit court which granted attorney fees and costs against them and in favor of defendant Sonjia Renee Harrison (defendant). (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) Edwards and Thomas contend that the imposition of sanctions was an abuse of the trial court's discretion.

On April 25, 1988, Edwards, by her attorney, Thomas, filed a complaint to quiet title and for injunctive relief. In count I she alleged that she owned and was in possession of certain improved Chicago real estate by virtue of an oral agreement between Salathiel Walden, Clarence Harrison, and herself, in which she "gave *** Mr. Harrison the money *** to clear the title of all back taxes and Mr. Harrison agreed to convey the premises back to [her] once he received a clear tax deed." Edwards further claimed that on the same day that he died, Harrison "received [a clear, 1984[2]] tax deed to the property and delivered the original to [her]." In count II she alleged that she also owned "valuable personal property located on the premises," and that "on information and belief, *** defendants [were] destroying, selling and otherwise disposing of [her] personal property." The complaint was signed by Thomas and verified by Edwards.

Defendant moved to dismiss Edwards' complaint, contending

---

[2]The tax deed was dated in 1984 and recorded in 1987.

that any alleged oral agreement was unenforceable under the Statute of Frauds (Ill. Rev. Stat. 1987, ch. 59, par. 1 *et seq.*). Defendant also moved for sanctions pursuant to section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), attaching to her motion excerpts from Edwards' deposition in which she stated that she had never seen the complaint and that she claimed to own the property by virtue of both the 1984 tax deed and a 1987[3] quitclaim deed from Harrison. Edwards also stated in her deposition that she did not see Harrison on the day he died, and that she owned no personal property on the disputed premises. Attached as an appendix to defendant's memorandum in support of her motion for summary judgment was a letter dated August 7, 1988, to defendant's attorney from Steven C. McKasson, a professional document examiner, stating that in his opinion, Harrison's purported signature on the 1987 quitclaim deed was not genuine.

On August 10, 1988, Edwards filed an amended complaint alleging that as proof of the above-described oral agreement, "plaintiff tendered to Jerome Wade the sum of Ten Thousand Six Hundred and Ninety-Four ($10,600.94) [*sic*] for an assignment of the rights to pursue a tax deed in the name of Clarence Harrison."[4] Edwards also alleged that Harrison "delivered [to her] the original [1984] tax deed, as well as the [1987] quit claim deed conveying the property to [her]," on the date of his death. Count II still alleged that, "on information and belief, *** defendants [were] destroying, selling and otherwise disposing of [her] personal property." Defendant moved to dismiss Edwards' amended complaint, again contending that the oral agreement alleged in count I was unenforceable under the Statute of Frauds, and that Harrison's purported signature on the 1987 quitclaim deed was a forgery. On October 11, 1988, the trial court dismissed count I with leave to amend, and dismissed count II with prejudice.

On February 7, 1989, Edwards filed a second amended complaint, alleging that by virtue of a 1984 quitclaim deed from Walden and a 1987 quitclaim deed from Harrison she was the owner of the land in question. Defendant moved for summary judgment, contending that, as a matter of law, (1) the 1984 Walden deed was insufficient to establish her ownership in the property, since she admits that the property

---

[3]The quitclaim deed was dated in 1987 and recorded in 1988.

[4]In later pleadings, plaintiff refers to this amount as "$10,694.00."

was sold pursuant to a subsequent tax sale to Harrison, (2) the 1987 Harrison deed was void because his signature had been forged, and (3) the 1984 tax deed did not entitle Edwards to the property because the deed was in Harrison's name only. Attached as an appendix to defendant's memorandum in support of her motion for summary judgment was McKasson's sworn affidavit stating that Harrison's signature was a forgery. On the same day defendant also answered Edwards' second amended complaint, setting forth two affirmative defenses: (1) that any property rights which Edwards had in the premises in 1984 were extinguished by the subsequent tax sale of the property; and (2) the 1987 quitclaim deed was void because Harrison's purported signature thereon was a forgery.

Edwards responded to defendant's motion by relying on Walden's discovery deposition regarding the authenticity of Harrison's signature to support her contention that there was a genuine issue of material fact as to whether the signature on the 1987 quitclaim deed was genuine. On March 28, 1989, the trial court issued its memorandum opinion, holding that Edwards' " 'response' to defendant's motion for summary judgment [was] legally insufficient" because "the mere attachment of a party's 'verification' to a response to a motion for summary judgment does not bring the response in conformity with Supreme Court Rule 191" (107 Ill. 2d R. 191), and requested that an order be drafted consistent with the ruling therein. Although his "instinct [was] to grant summary judgment originally," the trial judge "interpret[ed] respondent's evidence liberally" and declined to rule that Edwards had admitted that Harrison's signature was a forgery, and set the matter for an evidentiary hearing as to the forgery issue only.

The evidentiary hearing was held on May 2, 1989, and although McKasson testified in behalf of defendant, Edwards produced no witnesses to attest to the authenticity of Harrison's signature, but instead, "rel[ied] on our response to defendants' motion for summary judgment." The court responded, however, that because it was an evidentiary hearing, it could not "read affidavits and accept those, unless there is a stipulation to that effect." Thus, as to the issue of authenticity, Edwards had only the 1987 quitclaim deed itself to rely upon. As a result of this hearing, the court ordered "plaintiff's complaint *** dismissed with prejudice."

On May 23, 1989, pursuant to section 2—611, defendant again moved for sanctions against Edwards and Thomas, alleging that they had filed a series of "false and fraudulent" complaints which were not grounded in fact and were not supported by existing law. In particu-

lar, defendant alleged that Thomas should have discovered that Edwards' claim of ownership was barred by the Statute of Frauds, that a subsequent tax sale extinguished any ownership rights which Edwards may have had by virtue of Walden's 1984 quitclaim deed, and that the signature on the 1987 quitclaim deed, purporting to be Harrison's, was a forgery. Edwards responded that the underlying theory of her case had never changed, *e.g.*, that her oral agreement was supported by consideration to a third party who had purchased the taxes to the property. Edwards also alleged in her response that prior to the evidentiary hearing, Thomas had hired a private investigator to locate the notary public who notarized the deed, but had been unable to locate him. Nowhere in the record, however, does Thomas provide the name of the investigator, or an affidavit from the investigator, or a description of the steps the investigator undertook to locate the notary public. Edwards also claimed that she was financially unable to hire her own handwriting expert.

On October 2, 1989, the court granted defendant's motion for sanctions, noting the following:

"2—611 requires that a lawyer make a reasonable inquiry into the law and the facts before filing a complaint. There is no requirement or test for subjective bad faith and good faith is not a defense to imposition of 2—611 sanctions.

The pleading is not well grounded in fact if the pleading contains untrue statements of fact which the attorney knew or reasonably should have known that all, that the complaint with reference to the validity of the quit claim deed contained untrue statements of fact.

Had Mr. Thomas conducted a reasonable inquiry into the facts before filing the complaint, he would have discovered (a) That the signature was suspect to a lay person's eyes; (b) Attempt to corroborate the testimony of the single witness who claimed to know Mr. Harrison's signature; (c) Produce those people at the trial; and frankly (d) If finances warrant it, produce a handwriting expert.

I want to make my position clear here to the Appellate Court. What I am saying is that this signature on the deed compared to genuine signatures of Mr. Harrison were so grossly disproportionate that it created a duty on a lawyer's part to make reasonable inquiry as to the genuineness of the signature.

Second of all, once the defendant raised the affirmative defense of forgery, which admittedly was not raised until obvi-

ously the complaint was filed, the plaintiff's counsel had a further obligation to inquire further, further than his client's statements as to the genuineness of the signature, which was not done at least from a production of evidence point of view."

On December 13, 1989, the court "deducte[d] $8,070.25 from the [claimed] fees for a total of $20,824.75, and $853.64 from the [requested] costs, for a total of $1990.56."

Pursuant to Edwards' motion to clarify, on January 19, 1990, the court issued a memorandum opinion stating that Edwards and Thomas were jointly and severally liable for the amount of sanctions pursuant to *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Association* (D. Kan. 1986), 629 F. Supp. 1002, 1013, *rev'd on other grounds* (10th Cir. 1989), 891 F.2d 1473, for "when the attorney and client share responsibility for litigation strategy that violates the rule, the court will impose joint and several liability." On February 21, 1990, Edwards filed her notice of appeal. Edwards and Thomas filed separate briefs, each on his or her own behalf.

I

■ In his brief Thomas claims that the trial court erred in applying section 2—611 instead of Supreme Court Rule 137. (134 Ill. 2d R. 137.) Defendant responds, however, that the court could not have applied Rule 137 because "[c]onstitutional law, as well as common sense, dictate that a court cannot apply a new rule—especially one involving sanctions—to conduct that occurred before the new rule was even announced." We disagree. Rule 137 became effective August 1, 1989, and preempted all matters previously governed under section 2—611. It is identical to former section 2—611 except for three minor changes: (1) Rule 137 makes the imposition of sanctions discretionary rather than mandatory; (2) Rule 137 requires a trial judge to set forth specific reasons for sanctions in an order; and (3) unlike section 2—611, Rule 137 has no provisions regarding insurance companies.

■ In support of her contention, defendant cites *Rivard v. Chicago Fire Fighters Union, Local No. 2* (1988), 122 Ill. 2d 303. Although *Rivard* notes a general "presumption of prospectivity," it also notes that "the presumption of prospectivity does not apply to changes in procedure or remedies. When a change in the law changes procedure alone, it will be construed as retroactive so long as that is what the legislature intended." (*Rivard*, 122 Ill. 2d at 310.) More important, this court has recently held in *Sajdak v. Sajdak* (1992), 224

Ill. App. 3d 481, 494, that even though the defendant's pleadings there were filed

> "before the adoption of the rule, we believe that the rule should be given retrospective application since it imposes no greater duty on the parties than did section 2—611. The only change relevant to the case before us is a procedural one—the requirement that the judge make specific findings in his order imposing sanctions."

(But see *Cmarko v. Fisher* (1990), 208 Ill. App. 3d 440, 444 (because the complaint had been filed prior to the effective date of Rule 137, the court held that amended section 2—611 controlled); *In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, 1008-09, *appeal denied sub nom. Gualandri & Co. v. Smith* (1991), 136 Ill. 2d 544 (because all relevant pleadings, except one, had been filed prior to the effective date of Rule 137, the court "le[ft] it to the circuit court on remand to determine which of section 2—611 and Rule 137 apply to which of the papers filed").) Accordingly, we find that under these circumstances Rule 137 is capable of retroactive application and that it was the appropriate measure to apply in the case at bar.

We also find, however, that although the trial court did not explicitly state that it was following the requirements of Rule 137, the standards it applied were consonant with the rule. In particular, the judge "set forth on the record and with specificity" the reasons for imposing sanctions (*In re Estate of Smith*, 201 Ill. App. 3d at 1010), in that he made specific findings regarding Thomas' and Edwards' failure to ensure that their pleading was well-grounded in fact.

## II

On appeal Edwards and Thomas contend that the trial court abused its discretion (*Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334) in awarding sanctions against them. Rule 137, as did its predecessor section 2—611, imposes on both client and counsel the duty to make reasonable inquiry into the facts to support a legal claim or defense before pleadings and other legal papers are filed with the court. (*Lewy*, 211 Ill. App. 3d at 334; see also *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 622.) Generally, an attorney cannot simply rely on the client's representations when additional information is readily obtainable from third parties, but instead,

> "must objectively review the information submitted by his client, to determine if it factually supports the client's claim; [and] if such review reveals important discrepancies, inconsis-

tencies, or gaps in the information provided, the attorney must investigate further before filing the relevant legal paper with the court." (*Anderson*, 177 Ill. App. 3d at 625.)

Subjective good faith is not sufficient to meet the burden of Rule 137; rather, a court must use "an objective standard to determine whether a particular inquiry was reasonable, based upon the circumstances that existed at the time the pleading was filed." (*Cmarko*, 208 Ill. App. 3d at 445.) This standard is met when the relevant legal paper has a "reasonable basis in fact." *Tarkowski v. County of Lake* (7th Cir. 1985), 775 F.2d 173, 176.

## A

We conclude that the trial court did not abuse its discretion in awarding attorney fees against Thomas. Even if the outcome of this matter would have been different had it been decided originally by this court, such is not the standard of review we are required to employ. Rather, the standard, as enunciated in *Lewy* (211 Ill. App. 3d at 334-35), is that if "reasonable persons could differ as to the propriety of the trial court's actions, then a reviewing court cannot say that the trial court exceeded its discretion." Thus, it would not be meet for us to substitute our judgment for that of the trial court.

Before Thomas filed the second amended complaint, which relied, in part, upon the 1987 quitclaim deed from Harrison to support Edwards' claim to the property, defendant notified him that there was a strong likelihood that Harrison's signature was a blatant forgery, showing him the report from McKasson which indicated glaring discrepancies in a comparison of the signatures. Nevertheless, Thomas chose not to heed the evidence and subsequently filed the second amended complaint, still relying on the validity of the 1987 quitclaim deed from Harrison.

Even though an attorney is not obligated to voluntarily dismiss his lawsuit merely because the opposing party presents purported evidence of a crucial fact in his pleadings (*Peoples Gas Light & Coke Co. v. Black Steer Provision Co.* (1985), 131 Ill. App. 3d 387, 391-92), under the facts at bar, once Thomas was aware of "important discrepancies, inconsistencies, or gaps in the information provided," it became his responsibility to "investigate further before filing the relevant legal paper with the court." (*Anderson*, 177 Ill. App. 3d at 625.) Although Thomas asserts that he made a reasonable inquiry into the validity of Harrison's signature before he filed his amended pleading, at no time did he ever present any evidence in support of his efforts. First, at the evidentiary hearing, he represented to the court that he

had hired an investigator to locate the notary who witnessed Harrison's signature on the deed, but Thomas failed to offer into evidence the name of the investigator, the efforts the investigator undertook to locate the notary, or the results of his search.

Second, Thomas asserted that he could reasonably believe that Harrison's signature on the deed was genuine because of Salathiel Walden's discovery deposition testimony attesting to its validity. The critical portion of Walden's deposition testimony, however, is hopelessly unpersuasive. In response to the question, "And does that look like his signature that you have seen before?" Walden answered, "Close." Indeed, defendant presented two witnesses to contradict Walden's statement: Shinell Lasley, Harrison's ex-wife, and Stephen McKasson, a handwriting expert. Moreover, McKasson provided a detailed and irrefutable analysis to support his conclusion that Harrison's signature was a forgery. Thus, even if the trial judge had considered Walden's deposition, the evidence indefeasibly proved that the signature was forged.

Thomas also attempts to buttress his argument with the allegation that Edwards had paid $10,694 to Wade in return for a tax deed in Harrison's name, but the record does not support this contention. The record reflects only that Edwards withdrew $10,694.49 from the Inland Steel Credit Union. Nowhere, however, is there any evidence that this amount was in turn received by Wade or that it was given to him for the purpose of obtaining a tax deed to the property in question.

We also deem it irrelevant to determining the propriety of sanctions that the trial court did not grant summary judgment in favor of defendant. The trial judge exhibited extraordinary patience in allowing plaintiff multiple opportunities both to plead and to prove her case. Indeed, he viewed Walden's deposition testimony in an extremely favorable light in order to reach the conclusion that it was necessary to hold a hearing on the issue of genuineness; but, merely because the trial court refused to grant summary judgment on this issue does not mean that Thomas conducted a reasonable inquiry into the validity of Harrison's signature and therefore had a reasonable basis for relying on the 1987 quitclaim deed to support his claim. Summary judgment and Rule 137 address different issues; summary judgment is permissible where no genuine issue of material fact is present. Rule 137 is applicable, however, where the person signing the legal paper failed to make a reasonable inquiry into the factual and legal basis for the claims made in that document.

The means are many and varied by which a party may be able to create an issue of fact and defeat a motion for summary judgment and still not meet Rule 137's reasonable inquiry requirement. By its denial of summary judgment the trial court enabled Thomas to produce evidence at the hearing to rebut defendant's evidence that Harrison's signature was forged; yet, Thomas merely demonstrated how totally lacking his efforts were in getting to the truth of the matter—to be sure, it was entirely appropriate for the trial judge to conclude that Thomas was arrantly incredible as to this all-encompassing issue. Indeed, at the close of the hearing on May 2, 1989, the trial judge stated, "I am outraged at this case. It has a strong odor of fraud on the court," and he expressed the opinion that if the deed was in fact notarized, "there is no question that *** he did it contrary to the law." After even the most cursory review of the record, we can, without any tedious cerebration, agree with the judge's conclusions.

We therefore hold that once Thomas received notice of the exceedingly strong probability that Harrison's signature was not genuine, he was under a duty to make reasonable inquiry into the validity of the signature. We are not convinced that Thomas made even the flimsiest record of his attempts to hire an investigator to locate the notary who witnessed Harrison's signature, and we do not agree that Thomas was justified in relying upon the quitclaim deed itself, along with Walden's totally forceless deposition testimony appended to plaintiff's response to defendant's motion for summary judgment, to contradict the testimony of Harrison's former wife and the conclusions presented from the witness stand by McKasson, an expert in such matters. For these reasons, we hold that the trial court did not abuse its discretion in awarding sanctions against Thomas.

### B

We also find, in addition to the reasons stated above, that the trial court did not abuse its discretion in awarding sanctions against Edwards. Rule 137 places the burden of reasonable inquiry on clients as well as on their attorneys by virtue of the fact that their signatures appear on the relevant legal papers. (*Lewy*, 211 Ill. App. 3d at 334.) Thus, because Edwards verified both the first and second amended complaint, she was under the same duty as Thomas to make reasonable inquiry regarding the genuineness of Harrison's signature. More so than Thomas, Edwards should have had reason to question the validity of the deed, since she had been Harrison's business partner for quite a while and thus would have been quite familiar with his genuine signature.

## C

Having found both Thomas and Edwards liable under Rule 137, we also find that the trial court was within its discretion in making their liability joint and several. See *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.* (1990), 203 Ill. App. 3d 304, 313; *Kennedy v. Miller* (1990), 197 Ill. App. 3d 785, 793; and *National Wrecking Co. v. Midwest Terminal Corp.* (1991), 234 Ill. App. 3d 750, 601 N.E.2d 999.

## III

Finally, in oral argument before this court defendant sought imposition of costs and fees incurred in defense of this appeal; but since she has not filed an appropriate motion or petition in this court, and inasmuch as she did not argue it in her brief, we decline to entertain the issue *sua sponte*.

For the above-stated reasons, we affirm the decision of the trial court.

Affirmed.

DiVITO and McCORMICK, JJ., concur.