No. 1-06-1224

FIRST DIVISION
Filed: 9-17-07

ANGELA LEVACCARE,                                       )         Appeal from the
                                                        )         Circuit Court of
      Plaintiff-Appellee and Cross-Appellant,         )         Cook County.
                                                        )
      v.                                                )
                                                        )
RALPH LEVACCARE, Individually and as Trustee            )
of the Mary Marotta Levaccare Trust, Dated August 21,   )
1991, RALPH LEVACCARE, as Custodian for                 )         No. 03 CH 18897
Matthew C. Levaccare under the Illinois Uniform         )
Transfers to Minors Act, RALPH LEVACCARE, as            )
Custodian for Lauren M. Levaccare and as Custodian      )
for Lauren M. Levaccare under the Illinois Uniform      )
Transfers to Minors Act, JUDITH LEVACCARE and           )
CHRISTOPHER LEVACCARE,                                  )         Honorable
                                                        )         Julia M. Nowicki,
      Defendants-Appellants and Cross-Appellees.        )         Judge Presiding.

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Angela Levaccare filed a complaint in the circuit court of Cook County alleging that her brother, Ralph Levaccare, diverted to himself, his wife, and children, millions of dollars that her mother (Mary M. Levaccare) intended to give to her. Among other things, Angela alleged that Ralph (1) caused approximately $900,000 worth of checks to be written for his and his own family's benefit from his mother's account while she was terminally ill, and (2) caused title to a three-story residential building, in which Angela lived, to be transferred to himself by means of fraud and/or forgery.

On July 22, 2004, the trial court suspended pleadings pending settlement negotiations between Ralph and Angela. On September 13, 2004, the parties engaged in settlement

negotiations, in court, with the trial judge's participation. On September 15, 2004, the parties signed a handwritten memorandum prepared by the trial judge memorializing seven points of compromise. The signed memorandum specified that Ralph agreed to pay Angela $450,000, convey a life estate in the three-story residential building to Angela, and convey certain bank accounts held by him to Angela as custodian for her grandchildren.

Subsequent to the settlement discussions, the parties exchanged draft settlement agreements to further detail the terms of the agreement reached on September 15, 2004. The draft settlement agreements presented to the trial court essentially agreed as to all points of the agreement reached on September 15, 2004, but disagreed as to whether the life estate to be conveyed to Angela should be by trust document or by deed with conditions subsequent, and whether the life estate should include any forfeiture provisions to Ralph, who was to retain the remainder to the three-story residential building. Foremost among Ralph's concerns was that Angela might not properly maintain the property during the duration of her life estate causing a diminution of the remainder estate.

On December 3, 2004, Angela filed a motion to "Interpret and Enforce Settlement Agreement." The court ordered the parties to submit briefs as to their positions. On February 9, 2005, the trial court ordered Ralph to "submit to the court and counsel for Angela interlineations on Angela's settlement documents while citing changes Ralph feels entitled to based on the settlement agreement reached on September 15, 2004, on or before February 16, 2005." Along with a letter dated February 14, 2005, addressed to the trial judge, Ralph's counsel returned a copy of Angela's proposed settlement agreement bearing interlineations stating the ways Ralph

felt the proposed settlement agreement differed from the seven-item agreement reached on September 15, 2004. In the letter dated February 14, 2005, to the trial court, Ralph expressed regrets that the settlement process had been unsuccessful and requested that the trial court set the case for trial.

On February 23, 2005, Angela filed a motion requesting interest on the funds that Ralph had agreed to pay in the settlement agreement and on the net income generated by the rents on the subject property. Ralph, in response to the motion, denied that the parties had mutually agreed to the terms of any agreement. On March 8, 2005, after hearing argument from both parties, the trial judge issued an "Order and Opinion Memorandum" confirming that the parties had entered into an enforceable settlement agreement before her and finding that Ralph's objections to the agreement were inconsistent with concessions he had made as part of the September 15, 2004, agreement in which the trial court had directly participated.

On March 29, 2005, the trial court entered a final judgment order directing that Ralph comply with the terms of the parties' settlement agreement. Ralph did not comply. Ralph filed a notice of appeal on April 19, 2005, which was dismissed by this court on August 9, 2005, upon Angela's motion, for failure to attach the March 29, 2005, order in the notice of appeal and failure to timely prepare the record for appellate review. *Levaccare v. Levaccare*, No. 1-05-1399 (2005) (unpublished order under Supreme Court Rule 23). Ralph's petition for rehearing was denied on September 22, 2005, and his petition for leave to appeal to our Illinois Supreme Court was denied on December 1, 2005. Ralph continued to refuse to comply with the trial court's judgment order.

3

Angela thereafter issued a number of citations to discover assets to Ralph and third-party financial institutions to collect on the $450,000 money judgment portion of the trial court's order. The trial court later ordered several financial institutions to liquidate certain assets of Ralph's to satisfy the judgment.

On September 29, 2005, Angela filed a "verified petition for adjudication of indirect civil contempt," asking the trial court to find Ralph in civil contempt for failure to comply with the trial court's order and specifically his refusal to convey a life estate in the three-story residential building to Angela. The trial court set a hearing for a rule to show cause for November 30, 2005, for Ralph to show cause, if any he can, as to why he should not be held in contempt for his failure to comply with the trial court's order.

On November 29, 2005, Ralph presented a petition for substitution of judge. The trial court denied the petition to the extent it sought substitution as a matter of right. Pursuant to section 2-1001(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(3) (West 2004)), the trial court referred the matter of substitution for cause to the presiding judge of the chancery division for referral to another judge. That judge denied the petition, finding that the there was no basis to find that the trial judge was biased against Ralph. The motion to show cause as to why Ralph should not be found in civil contempt was set for January 6, 2006.

On January 5, 2006, Ralph filed a notice of appeal, purporting to appeal the order denying Ralph's petition for substitution. Ralph never prosecuted that appeal, and it was eventually dismissed on this court's own motion. *Levaccare v. Levaccare*, No. 1-06-0607 (2006) (unpublished order under Supreme Court Rule 23).

4

On January 30, 2006, Ralph filed a petition for a supervisory order before the Illinois Supreme Court. During the pendency of that petition, Ralph represented to the trial court that if the petition for a supervisory order was denied, Ralph would voluntarily comply with the terms of the trial court's order making a contempt proceeding unnecessary. The Illinois Supreme Court denied Ralph's petition for supervisory order on March 6, 2006. On March 9, 2006, the trial court held entry of the contempt order in abeyance pending Ralph's voluntary compliance with the court's judgment. Ralph thereafter voluntarily complied with the order's key provisions.

However, Ralph refused to pay Angela the income she had lost from the three-story residential building during the period that Ralph refused to comply with the trial court's order.

On March 27, 2006, the trial court ordered a judgment in favor of Angela and against Ralph in the amount of $20,000, stipulated to by Ralph, for the income Angela lost during Ralph's noncompliance with the trial court's judgment order. The rule to show cause was also dismissed in the same order.

Ralph filed a notice of appeal on April 26, 2006. On appeal, Ralph firstly argues that the trial court erred by denying his petition for substitution of judge. Ralph then argues that all subsequent orders entered after the denial of his petition to substitute judge are void due to the trial court's initial error. Ralph then argues that the trial court erred by: (1) altering the terms of his mother's trust, (2) failing to conduct an evidentiary hearing before finding that the parties entered into a binding settlement agreement, and (3) compelling third-party defendants to answer

No. 1-06-1224

Angela's citations to discover assets and to liquidate assets owned by Ralph to satisfy the money judgment.

ANALYSIS

At the trial level, Ralph argued that he was entitled to a substitution of judge as a matter of right or in the alternative entitled to a substitution of judge for cause. As noted, Ralph contends on appeal that all subsequent orders entered by the trial court after its denial of his motion for substitution are void.

Motions for substitution of judge as a matter of right are governed by section 2-1001 of the Illinois Code of Civil Procedure, which states in pertinent part:

"(a) A substitution of judge in any civil action may be had in the following situations:

***

(2) Substitution as of right. When a party timely exercises his or her right to a substitution without cause as provided in this paragraph (2).

(I) Each party shall be entitled to one substitution of judge without cause as a matter of right.

(ii) An application for substitution of judge as of right shall be made by motion and shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, or if it is presented by consent of the parties." 735 ILCS 5/2-1001(a)(2) (West 2004).

6

" 'The substitution of judge as a matter of right is absolute where the motion requesting the substitution is filed before the judge presiding in the case has made a substantial ruling.' " *Scroggins v. Scroggins*, 327 Ill. App. 3d 333, 336 (2002), quoting *Alcanter v. Peoples Gas Light & Coke Co.*, 288 Ill. App. 3d 644, 648 (1997). "However, to prohibit litigants from 'judge shopping' and seeking a substitution only after they have formed an opinion that the judge may be unfavorably disposed toward the merits of their case, a motion for substitution of judge as [a matter] of right must be filed at the earliest practical moment before commencement of trial or hearing and before the trial judge considering the motion rules upon a substantial issue in the case." *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 245-46 (2006). "In addition, our courts have determined that even if the trial court did not rule on a substantial issue, a motion for substitution of judge as [a matter] of right may still be denied if, before filing the motion, the moving party had an opportunity to test the waters and form an opinion as to the court's disposition toward his claim." *Hoellen*, 367 Ill. App. 3d at 246.

In this case, the parties agree that the trial court had ruled on substantial issues prior to Ralph's petition for substitution of judge. Furthermore, Ralph certainly had ample opportunity to test the waters and form an opinion as to the court's disposition toward Ralph's position, especially since the trial court was so intimately involved in the parties' settlement negotiations. Ralph, however, seeks to avoid this preclusion of his right to substitute judge by arguing that the rule to show cause initiated a new proceeding, thus entitling Ralph to one unconditional substitution. We disagree. We review the nature of contempt proceedings to explain our conclusion.

7

"Contempt of court has been defined as any act that is calculated to embarrass, hinder, or obstruct a court in the administration of justice, or that is calculated to lessen its authority or dignity." *People v. Budzynski*, 333 Ill. App. 3d 433, 438 (2002), citing *People v. Simac*, 161 Ill. 2d 297, 305 (1994). "Contempt of court may be classified as civil or criminal and further classified as direct or indirect." *Budzynski*, 333 Ill. App. 3d at 438. A direct contempt is a contempt committed in the presence of the court while the court is in session, as opposed to an indirect contempt that is committed outside the presence of the court. *Budzynski*, 333 Ill. App. 3d at 438.

"Criminal contempt is retrospective in nature and consists of punishing for doing what has been prohibited or not doing what has been ordered." *Budzynski*, 333 Ill. App. 3d at 438. "In contrast, civil contempt is prospective in nature and is invoked to coerce what has been ordered." *Budzynski*, 333 Ill. App. 3d at 438, citing *In re Marriage of Betts*, 200 Ill. App. 3d 26, 46 (1990).

Unlike indirect criminal contempt proceedings, which constitute separate and distinct proceedings not part of the original case being tried, "[i]ndirect civil contempt is a continuation of the original cause of action." *Budzynski*, 333 Ill. App. 3d at 438.

For the foregoing reasons, we find that the trial court did not err when it denied Ralph's motion to substitute judges as a matter of right. The indirect civil contempt proceedings were a continuation of the original case and did not constitute a separate proceeding. Since the trial court had already ruled on substantial issues, and since Ralph had ample opportunity to form an

opinion as to the court's disposition toward Ralph's position on whether a settlement had been agreed to by the parties, he was not entitled to a substitution of judge as a matter of right.

We next determine whether the trial court erred by denying Ralph's petition to substitute judge for cause. We initially note that Ralph does not argue for reversal on that basis before this court and may have waived the issue. *Murdy v. Edgar*, 103 Ill. 2d 384, 393 (1984).

Section 2-1001(a)(3) of the Code of Civil Procedure provides for a substitution of judge for cause. 735 ILCS 5/2-1001(a)(3) (West 2004). Effective January 1993, this section of the Code was amended to provide that a trial judge facing a petition for substitution is required to refer the petition to a "judge other than the judge named in the petition." 735 ILCS 5/2-1001(a)(3)(iii) (West 2004). We will reverse the determinations of the judge to whom the petition was transferred pertaining to allegations of prejudice on the part of the transferring judge only if the court's finding is contrary to the manifest weight of the evidence. *In re Marriage of Schweihs*, 272 Ill. App. 3d 653 (1995).

Ralph claimed that the trial court had erroneously found that the parties had reached a settlement agreement and that the trial court impermissibly altered the terms of his mother's trust. The trial court transferred the petition for substitution of judge for cause to another judge. The judge to whom the petition was referred determined that Ralph had failed to demonstrate any prejudice on the part of the trial court. Furthermore, the reviewing judge found no basis to indicate that the trial court was biased against Ralph or his case.

Our review of the record likewise yields no indication of prejudice on the part of the trial judge. At most, the allegations of prejudice made by Ralph, reiterated above, take exception to

9

the findings entered by the trial judge but fail to demonstrate any prejudice at all. It is well settled that " 'rulings by the circuit court are insufficient reasons to believe that the court had personal bias or prejudice for or against a litigant.' " *Hoellen*, 367 Ill. App. 3d at 249, quoting *In re Marriage of Hartian*, 222 Ill. App. 3d 566, 569 (1991).

Ralph's argument that all subsequent rulings of the trial court were void after the denial of his petition to substitute judges must likewise fail, since we have already rejected the premise for that argument.

Ralph then argues that the trial court erred by: (1) altering the terms of his mother's trust, (2) failing to conduct an evidentiary hearing before finding a settlement agreement, and (3) by finding that the agreement executed on September 15, 2004, was binding.

Angela argues that these arguments are precluded by res judicata. We agree.

"The doctrine of res judicata or estoppel by judgment provides that a former adjudication on the merits by a court of competent jurisdiction constitutes an absolute bar to a second adjudication where there is identity of parties, subject matter and cause of action." *Village of Northbrook v. County of Cook*, 88 Ill. App. 3d 745, 749 (1980). The record indicates that Ralph filed a notice of appeal on April 19, 2005, purporting to appeal the order that pertained to the arguments listed above. This court dismissed the appeal on August 9, 2005, upon Angela's motion, for failure to attach the order appealing from and for failure to timely prepare the record for appellate review. *Levaccare v. Levaccare*, No. 1-05-1399 (2005) (unpublished order under Supreme Court Rule 23). Ralph's petition for rehearing was denied on September 22, 2005, and his petition for leave to appeal to our Illinois Supreme Court on December 1, 2005. The

10

judgment order entered by the trial court became <u>res</u> <u>judicata</u> upon the denial of Ralph's petition for leave to appeal to the Illinois Supreme Court. *Kenny v. Interim General Superintendent of Schools.*, 112 Ill. App. 3d 342, 348 (1983). The order, from which Ralph now appeals, cannot revive his right to raise the same issues he could have raised before.

Ralph then argues that the citation orders issued to third-party financial institutions were improper. Angela argues that this court lacks jurisdiction to consider Ralph's arguments pertaining to the citation orders. We agree with Angela.

Illinois Supreme Court Rule 304(b)(4) provides that a final judgment order entered in a supplementary proceeding under section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2004)) is immediately appealable. 210 Ill. 2d R. 304(b)(4). All the citation orders became final and appealable upon their entry. Since Ralph failed to appeal any of the citation orders within 30 days of their entry, this court lacks jurisdiction to consider Ralph's argument.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

McBRIDE, P.J. and GARCIA, J., concur.