# Illinois Official Reports

## Appellate Court

---

### *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063

---

| | |
|---|---|
| Appellate Court Caption | WILLIAMS MONTGOMERY & JOHN LIMITED, Plaintiff-Appellee, v. BRET BROADDUS, Defendant-Appellant (Bradley Associates, LLC, Citation Respondent-Appellee; Stanley, LLC, Citation Respondent-Appellant; Bert Zaczek, Sanctioned Attorney-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-1063 |
| Filed<br>Modified upon denial of rehearing | October 27, 2017<br><br>December 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-7059; the Hon. Alexander P. White, Judge, presiding. |
| Judgment | Affirmed in part, vacated and remanded in part, and dismissed in part. |
| Counsel on Appeal | Law Office of Bert Zaczek, of Chicago (Bert Zaczek and Amy Pikarsky, of counsel), for appellants.<br><br>Williams Montgomery & John Ltd., of Chicago (Michael C. Bruck and Evan P. Boyle, of counsel), for appellee Williams Montgomery & John Ltd.<br><br>Cozen O'Connor, of Chicago (Jack J. Carriglio and Jeffrey B. Greenspan, of counsel), for other appellee. |

JUSTICE DELORT delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Connors concurred in the judgment and opinion.

## OPINION

¶ 1 This appeal arises from a third-party citation to discover assets that the judgment creditor, plaintiff Williams Montgomery & John Limited (WMJ), served on citation respondent, Bradley Associates, LLC (Bradley), to collect a debt owed by defendant Bret Broaddus. The citation proceedings also resulted in an award of sanctions in favor of WMJ and Bradley and against Broaddus, Stanley, LLC (Stanley), and Broaddus's attorney, Bert Zaczek. Broaddus, Stanley, and Zaczek now appeal from the trial court's orders (1) directing Bradley to turn over certain of its assets to WMJ, (2) granting WMJ's motion for sanctions, and (3) granting Bradley's motion for sanctions. We affirm in part, vacate and remand in part, and dismiss in part.

¶ 2                                           BACKGROUND

¶ 3 The allegations in the sanctions motions before this court stem from an unrelated lawsuit prosecuted in federal court between Broaddus and Kevin Shields. We summarize the background of that lawsuit to provide necessary context to our disposition of the sanctions motions.

¶ 4                                     *The Shields Litigation*

¶ 5 In May 2008, Broaddus sued Shields (the Shields litigation), alleging breach of fiduciary duty regarding the sale of Broaddus's interest in Will Partners, LLC. Shields removed the case to federal court. Shields's response included a counterclaim for indemnification, including attorney fees, based upon the fee-shifting provisions in the Will Partners, LLC, operating agreement. In June 2010, the federal district court granted Shields's motion for summary judgment as to Broaddus's claim, and in September 2010, the court also granted Shields's motion for summary judgment as to his counterclaim for indemnification.

¶ 6 In October 2010, Broaddus established the BNR Revocable Trust (the Revocable Trust), a self-settled spendthrift trust, granting Broaddus the right to retain all trust income, distribute the trust assets as he wished, and revoke the trust. On December 9, 2010, Stanley was formed, with the Revocable Trust holding a 99% interest and Broaddus's daughter holding the remaining 1%. One week later, the federal district court entered judgment in favor of Shields and against Broaddus for $798,619.16 plus postjudgment interest.

¶ 7 Shields then issued citations to discover assets on Bradley and two financial institutions: Wintrust Wealth Management Company (Wintrust) and Lake Forest Bank & Trust Company (Lake Forest). Bradley responded that it held approximately $650,000 in cash assets for Broaddus. Both financial institutions responded that they had accounts either directly in Stanley's name or "FBO [for the benefit of]" Stanley. Shields also served citations on Stanley, the Revocable Trust, and Broaddus, but none of the three responded.

¶ 8    Shields then filed a motion for turnover, asking the federal district court to direct Stanley, the Revocable Trust, Broaddus, and the two financial institutions to transfer certain assets to Shields to satisfy the judgment. Broaddus responded, arguing in part that, since the funds were in the name of Stanley and not Broaddus, Shields could not recover them.

¶ 9    The district court rejected this argument. It first determined that, upon examining the various factors under section 5 of the Uniform Fraudulent Transfer Act (Act) (740 ILCS 160/5 (West 2010)), it was "clear that Broaddus fraudulently transferred his assets to the Revocable Trust." Specifically, the court found that Broaddus's transfer of the assets to the Revocable Trust was a transfer to an insider because Broaddus was the settlor and had complete control over (and received all of) the income and assets of the trust, including those assets he transferred into the trust. In addition, the court found that Broaddus knew that the court would soon impose a large outstanding money judgment against him when he transferred his assets to Stanley.

¶ 10    The district court further concluded that Broaddus created the Revocable Trust and transferred assets to it to hide his assets from Shields, the judgment creditor. It based this conclusion upon a series of e-mail messages that Broaddus had sent to Wintrust, demanding that Wintrust change the title of the accounts so that they were neither in Broaddus's name nor associated with Broaddus's taxpayer identification number. The court also found that Broaddus received no consideration for his transfer of funds to the Revocable Trust.

¶ 11    The court then found that, since Broaddus owned 99% of Stanley through the Revocable Trust, Shields could reach the assets of Stanley. In addition, the court noted that Broaddus formed Stanley in December 2010, which was "well after" the court had granted Shields's summary judgment motion and ordered Broaddus to pay Shields's attorney fees. The court concluded that "the overwhelming evidence" was that Broaddus formed Stanley "in a vain attempt to hide his assets from Shields" after the entry of summary judgment. Finally, the court commented on Broaddus's "history of dishonesty and disregard for" the court's prior rulings. See *Broaddus v. Shields*, No. 08 C 4420, 2012 WL 28694, at *10 (N.D. Ill. Jan. 5, 2012).

¶ 12    *WMJ's Proceedings Against Broaddus*

¶ 13    On October 20, 2010, WMJ filed a complaint against Broaddus seeking unpaid legal fees. On July 21, 2011, WMJ obtained a judgment in the amount of $129,538.39 against Broaddus. WMJ began supplementary proceedings by filing a third-party citation to discover assets, which was directed to Bradley, among others.

¶ 14    On May 29, 2012, WMJ filed a motion for turnover, asking the trial court to order Bradley, a real estate investment company, to immediately transfer certain cash assets to WMJ. Attached to WMJ's motion was an affidavit from Sherwin Jarol, a limited partner of Bradley Associates, LP (the LP). Jarol first noted that, in addition to being one of the LP's limited partners, he was also the sole member of the LP's general partner. Jarol further explained that, although Bradley was an "affiliate" of the LP, he referred to these entities collectively as "Bradley Associates."[1] Jarol then stated that, pursuant to statute,[2] the entities were retaining

---

[1] Although two entities are affiliated, the citation respondent-appellee in this case, Bradley Associates, LLC (Bradley), is a different entity from Bradley Associates, LP (the LP).

[2] See 735 ILCS 5/2-1402(f)(1) (West 2012).

- 3 -

double the judgment amount (*i.e.*, $259,076.78) of the cash assets that would otherwise be distributable to Broaddus.

¶ 15    The next day, Zaczek appeared on behalf of Broaddus, and he subsequently appeared on behalf of Stanley. On June 21, 2012, Stanley responded to WMJ's motion. Stanley asserted that it was an adverse claimant and that "the monies held in the Bradley & Associates account belong to Stanley," but Bradley "made a mistake and failed to correctly identify the owner of the funds." Stanley further informed the court that, although it had received WMJ's motion three weeks earlier, it was unable to obtain the documents supporting its claim. Stanley specifically stated that, "[i]f given adequate time to subpoena a lawyer in Florida," as well as Bradley's employees and other unnamed "non-parties that hold records," Stanley would be able to establish its ownership of the funds.

¶ 16    Stanley's response also included an affidavit in which Broaddus swore that he had transferred money to Bradley to be held in the name of Stanley in furtherance of his estate plan "[p]rior to December 2010." Broaddus further stated that he learned in December 2010 or January 2011 that Bradley had made a mistake regarding the identity of the entity for which it held the money. Although Broaddus instructed Bradley to "immediately" correct the error, Bradley failed to do so. Stanley requested a hearing and additional time to conduct discovery to support its adverse claim.

¶ 17    Bradley and WMJ each filed a reply to Stanley's response. Bradley rejected Stanley's claim that Bradley erred regarding the name in which the funds should have been held, pointing out that, since Stanley had not been formed until December 2010, it was impossible for Broaddus to have begun transferring assets to Stanley prior to that date. Bradley attached as an exhibit a copy of Stanley's "Articles of Organization" (bearing a filing date of December 9, 2010) from the Division of Corporations of the Florida Department of State. Bradley further noted that, before forming Stanley and before making any transfer request to Bradley, the federal district court entered a judgment against Broaddus in the Shields litigation, and therefore the Act prohibited Broaddus from transferring any assets. Bradley added that the service of a citation upon it precluded it from transferring any of Broaddus's assets. Bradley also argued that Broaddus failed to provide the necessary documentation to effect the transfer. Finally, Bradley noted that the federal court already ruled that Stanley's assets were subject to turnover regardless of Broaddus's asserted purpose in creating Stanley.

¶ 18    WMJ's reply argued that Stanley's defenses were barred by collateral estoppel because (1) the federal court entered judgment against Broaddus and in favor of Shields one month before WMJ sued Broaddus and (2) the federal trial court rejected Broaddus's and Stanley's arguments opposing the citation proceeding in the Shields litigation. WMJ stated that all of the arguments Stanley "has, or will, make" against WMJ's citation proceeding had already been made, and rejected, in the Shields litigation.

¶ 19    On September 24, 2012, Stanley filed a petition objecting to the turnover. The petition, signed by Zaczek, was substantially the same as its June 2012 response to WMJ's motion. Stanley noted that the federal court in *Shields* found that "Broaddus was using Stanley to shield assets from" Shields because in part "Stanley came to exist after [Shields] obtained summary judgment against Broaddus." Stanley, however, argued that the federal court's finding "shed little if any light on whether" Broaddus was using Stanley to shield his assets from WMJ. Stanley emphasized that, "a finding that a transfer of assets was fraudulent as to one creditor does not mean that the transfer is fraudulent to all creditors." Stanley also repeated its

argument that the money held by Bradley belonged to Stanley, but that Bradley did not timely correct its mistake. In addition, the petition included the identical affidavit that Broaddus executed in support of Stanley's June 2012 response. Stanley further asserted that it was "never given a chance to participate" in the Shields litigation until after the federal court issued its order. WMJ filed a response opposing Stanley's petition, relying on the same arguments as those in its July 2012 reply. On April 1, 2014, following an evidentiary hearing on WMJ's motion, the trial court issued a written order granting the motion for turnover and denying Stanley's petition.

¶ 20                    *WMJ's and Bradley's Motions for Sanctions*

¶ 21        On October 5, 2012, WMJ filed a motion for sanctions against Stanley and Zaczek pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). WMJ argued that Stanley's petition was objectively frivolous because it "admit[ted] that all of the other transfers that were made from Broaddus to Stanley in December 2010 were made with the actual intent to defraud a creditor," but that the transfer from Bradley to Stanley was "different" because it involved a different creditor. WMJ stated that, pursuant to section 5 of the Act (740 ILCS 160/5 (West 2012)), fraudulent transfers with respect to one creditor are fraudulent as to any subsequent creditor, even if the creditor's claim arose after the fraudulent transfer.

¶ 22        WMJ further argued that Stanley's petition was "replete" with factual misrepresentations or omissions. WMJ noted that, although Stanley claimed in its petition that the federal district court order in the Shields litigation was entered without input from Stanley, Stanley had been served with a citation in that litigation in October 2011, well before the federal court's order in January 2012, but Stanley failed to appear and argue against Shields's motion for turnover. WMJ also noted that Stanley was aware of the Shields litigation because Broaddus, the managing member of Stanley, argued on behalf of Stanley's interests when he opposed Shields's motion for turnover by claiming that Shields could not seize Stanley's assets.

¶ 23        WMJ further claimed that Stanley's argument that its assets were separate from Broaddus's was frivolous because the federal court had already rejected that claim, finding that the Revocable Trust, which owned 99% of Stanley, was a self-settled trust created by Broaddus; Broaddus was entitled to all of the trust income and assets; and Broaddus could revoke or distribute the trust assets. WMJ asked the trial court to award it its reasonable attorney fees and costs related to Stanley's petition.

¶ 24        On February 6, 2013, Bradley filed an amended motion for sanctions against Stanley and Broaddus. Bradley again argued that Broaddus's claim that he had instructed Bradley to transfer various assets from his name into Stanley's before December 2010 was obviously false because Stanley was formed only in December 2010. The amended motion included an affidavit from Bradley's employee, Angela Ford. Ford indicated that, on January 1, 2011, Broaddus sent her an e-mail asking that all of his holdings be "titled and[/]or altered into Stanley, LLC." Ford's affidavit included a copy of that e-mail, as well as her response to it. The response stated that she told Broaddus that the transfer could not be completed because of missing information, such as Stanley's federal employer identification number, the mailing address for future distributions, and Stanley's operating agreement and manager name. Ford's affidavit also included a January 22, 2011, e-mail from Broaddus to her, asking that Bradley withhold all quarterly distribution checks until "Stanley was official." Bradley asked the

circuit court for sanctions against Stanley and Broaddus in the amount of Bradley's attorney fees and costs related to defending against Stanley's petition.

¶ 25    Stanley's response to WMJ's motion was a combined response and motion to dismiss WMJ's sanctions motion. Stanley only filed a response to Bradley's sanctions motion. Both pleadings, in essence, argued that WMJ and Bradley waived their right to seek sanctions because they both treated the April 1, 2014, turnover order "as if it were final" when Bradley tendered funds to WMJ, and WMJ accepted those funds.

¶ 26    On December 2, 2014, the circuit court issued a written order, granting WMJ's motion for sanctions and denying Stanley's motion to dismiss WMJ's motion. The court found that Stanley's petition was frivolous as a matter of law and was brought for the purpose of delay. On April 15, 2015, the court issued an additional written order concerning a petition for fees, which WMJ brought because of the December 2, 2014, sanctions order. The court noted that WMJ's fee petition included its schedule of fees and an affidavit by attorney Michael Bruck detailing his time and work. The order also acknowledged that Stanley and Zaczek demanded an evidentiary hearing, and that they challenged various billing entries. The court denied Stanley's and Zaczek's request for a hearing, finding that it already had all of the relevant information before it and that all parties were provided an opportunity to object and present evidence on the matter. The trial court then awarded attorney fees of $74,578 in favor of WMJ and against Broaddus, Stanley, and Zaczek.

¶ 27    On May 18, 2015, the circuit court issued a written order, granting Bradley's motion for sanctions. There was no further order, however, awarding a specific amount of money to Bradley.

¶ 28    On March 15, 2016, the circuit court denied Stanley and Zaczek's motion to reconsider the various orders. On April 13, 2016, Broaddus, Stanley, and Zaczek (collectively, appellants) filed a notice of appeal seeking review of the following orders: (1) the April 1, 2014, order granting WMJ's motion for turnover and denying Stanley's petition; (2) the December 2, 2014, order granting WMJ's motion for sanctions; (3) the April 15, 2015, order awarding WMJ certain fees and costs as sanctions; (4) the May 18, 2015, order granting Bradley's motion for sanctions; and (5) the March 15, 2016, order denying the motion to reconsider.

¶ 29                                          ANALYSIS
¶ 30                                        *Jurisdiction*
¶ 31    Appellants contend that the circuit court erred in granting (1) WMJ's motion for turnover regarding certain assets that Bradley held for Broaddus's benefit, (2) WMJ's motion for sanctions, and (3) Bradley's motion for sanctions. WMJ responds that this court does not have jurisdiction to review this appeal because the appeal from the order on the motion for turnover was untimely and the orders on the motions for sanctions were not final and appealable. Bradley agrees with WMJ that the appeal from the motion for turnover is jurisdictionally flawed, but it does not raise a jurisdictional defense regarding the appeal from the order granting Bradley's motion for sanctions.

¶ 32    We have a duty to consider whether we have jurisdiction and to dismiss an appeal for lack of jurisdiction. *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984). Rule 301 allows appeals from final judgments as a matter of right. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. Const. 1970, art. VI, § 6. An order is considered final if it "determines the litigation on the

- 6 -

merits or some definite part thereof so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989).

¶ 33    Although the general rule is that a party can appeal a case "only after the circuit court has resolved all claims against all parties," there are exceptions to that rule. See *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 556 (2009). Notably, Rule 304(a) provides that, where there are multiple parties or multiple claims, an appeal may be taken from a final judgment "as to one or more but fewer than all of the parties or claims" only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

¶ 34    Rule 304(b), however, provides exceptions allowing immediate appeals from certain types of orders and judgments without the special finding under Rule 304(a). Ill. S. Ct. R. 304(b) (eff. Feb. 26, 2010). One such exception is a "final judgment or order entered in a proceeding under section 2-1402 of the Code of Civil Procedure [(Code)]" (735 ILCS 5/2-1402 (West 2010)). Ill. S. Ct. R. 304(b)(4) (eff. Feb. 26, 2010). Citation orders entered in supplementary proceedings pursuant to section 2-1402 become final and appealable upon their entry. See *Levaccare v. Levaccare*, 376 Ill. App. 3d 503, 511 (2007).

¶ 35    We first review the appeal from the April 1, 2014, order. It is clear that the appeal is untimely. WMJ's motion for turnover was brought pursuant to section 2-1402 of the Code. Hence, the trial court's order granting the motion (and denying Stanley's petition) became final and appealable when entered, *i.e.*, April 1, 2014. See *id.* Although there were sanctions motions pending at the time the turnover order was entered, the pendency of those motions did not affect the appealability of the April 1, 2014, order. Ill. S. Ct. R. 304(b)(4) (eff. Feb. 26, 2010) (final orders entered in proceedings under section 2-1402 are immediately appealable without a Rule 304(a) finding). Appellants' notice of appeal, however, was filed on April 13, 2016, nearly two years too late. We are therefore compelled to dismiss the appeal of the April 1, 2014, order for lack of jurisdiction. See *Archer Daniels Midland*, 103 Ill. 2d at 539.

¶ 36    Appellants' reliance upon *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6 (1998), is misplaced. *Niccum* concerned the effect a trial court's Rule 304(a) finding had on the appealability of an order dismissing a complaint with prejudice when a motion for sanctions is subsequently filed. This case, by contrast, concerns the appealability of an order granting a motion brought under section 2-1402 of the Code, which Rule 304(b) expressly makes immediately appealable without a Rule 304(a) finding and without regard to the filing of a motion for sanctions. *Niccum* is thus inapposite.

¶ 37    We next review the appeal from the circuit court's orders granting both WMJ's and Bradley's motions for sanctions, both of which were brought within the context of a section 2-1402 proceeding. Neither order imposed a monetary award or any other penalty, but on April 15, 2015, the court granted WMJ's fee petition (which the trial court noted was specifically brought pursuant to the prior order granting WMJ's motion for sanctions) and awarded WMJ $74,578 in attorney fees and costs. Here, the order granting WMJ's motion for sanctions, which was reduced to a specific monetary award, placed WMJ in a position to collect against that judgment. As such, the order was a final order under section 2-1402. See *D'Agostino v. Lynch*, 382 Ill. App. 3d 639, 642 (2008) (holding that an order in a section 2-1402 proceeding is final when the citation petitioner "is in a position to collect against the judgment debtor or a third party"). Since the trial court's granting of WMJ's motion for sanctions is a final order under section 2-1402, it is immediately appealable pursuant to Rule 304(b)(4).

¶ 38    By contrast, there is no judgment upon which Bradley can execute, so the May 18, 2015, order granting Bradley's amended motion for sanctions is not a final, appealable order. Nothing in the record indicates that the court ever tied up the loose end regarding Bradley's motion for sanctions by awarding it a specific monetary amount. Therefore, we dismiss the appeal from the trial court's order granting Bradley's motion for sanctions for want of jurisdiction.

¶ 39                        *The Sanctions Awarded to WMJ*

¶ 40    As noted above, we have jurisdiction over the granting of WMJ's motion for sanctions, and we now consider the merits of that appeal. Appellants argue that the circuit court erroneously granted WMJ's motion for sanctions. Specifically, they argue that, although the court found that Stanley's petition was frivolous and dilatory, the written order only reiterates the parties' respective arguments, followed by a conclusion, without any specific findings. Appellants further claim that the trial court improperly denied their request for an evidentiary hearing on the motion for sanctions.

¶ 41    Illinois Supreme Court Rule 137(a) requires that either a party or a party's attorney sign every "pleading, motion and other document" to certify that "it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. Feb. 1, 1994). The purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law. *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 33.

¶ 42    Rule 137 requires "both client and counsel" to make a reasonable inquiry into the facts to support a legal claim before filing a pleading or other legal paper with the court. *Edwards v. Estate of Harrison*, 235 Ill. App. 3d 213, 220 (1992). In general, an attorney may not simply rely on the client's representations if additional information is "readily obtainable from third parties." *Id.* We determine whether a reasonable inquiry was made using an objective, not a subjective, standard: "It is not sufficient that an attorney 'honestly believed' his or her case was well grounded in fact or law." *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074-75 (1995) (quoting *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 153 (1993)). Rule 137 further provides that, if the rule is violated, the court may impose a sanction "upon the person who signed it, a represented party, or both," compensating the other party for its reasonable expenses incurred because of the improper filing of the document, including attorney fees. Ill. S. Ct. R. 137(a) (eff. Feb. 1, 1994).

¶ 43    A trial court's decision to impose sanctions is entitled to "significant deference," and therefore we will not disturb its decision absent an abuse of discretion. *Petrik*, 2012 IL App (2d) 110495, ¶ 33. A court abuses its discretion where no reasonable person would take the view adopted by it. *Id.* ¶ 19.

¶ 44    Appellants' claim that the trial court's sanctions order is fatally defective because it has no "analysis" is without merit. Appellants contend that the order merely recites the parties' arguments and ends with a ruling without enumerating any findings. While the order is largely written in that style, we disagree that it is insufficient. The order granting WMJ's motion for sanctions and awarding WMJ its attorney fees states that the court agreed with WMJ's arguments that the petition was frivolous from both a legal and a factual perspective and was

brought to delay the proceedings. In particular, the order referred to WMJ's observation that, since Stanley's appearance in the case (May 30, 2012, three weeks after being served with WMJ's motion), Stanley never presented evidence from the attorney in Florida that Stanley argued would support its claim that it owned the assets at issue. The order also recounted that, although WMJ's sanctions motion was filed in October 2012, Zaczek did not inform the circuit court until April 2014 that he had a conflict of interest because he was a named party in the sanctions motion that also named his clients, Broaddus and Stanley. No new counsel appeared, however, and Zaczek's response to WMJ's sanctions motion was still filed one day after the August 27, 2014, deadline. In sum, the court provided sufficient detail to discern the basis for its conclusion, a conclusion that was amply supported in the record.

¶ 45    Appellants next claim that the circuit court erred in denying their request for an evidentiary hearing. Although in general a hearing on both the merits and the amount of fees is required before a court grants an award of sanctions (*In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 90), no hearing is required where "the court's determination of the issue can be made on the basis of the pleadings or trial evidence." *Century Road Builders, Inc. v. City of Palos Heights*, 283 Ill. App. 3d 527, 531 (1996); accord *North Shore Sign Co. v. Signature Design Group, Inc.*, 237 Ill. App. 3d 782, 791 (1992) (recognizing that the summary disposition of a sanctions motion "may be appropriate in cases where the pleadings, trial evidence and the factual basis in the record are clear").

¶ 46    In this case, the trial court did not need to hold a hearing on the issue of whether sanctions were warranted. There were ample facts in the record to support the court's finding that Stanley's petition was neither well grounded in fact nor warranted by existing law (or a good-faith argument for the modification of it). WMJ's motion for sanctions was based upon Stanley's filing of an objection to WMJ's motion for turnover. WMJ's motion centered upon filings that were already of record in the circuit court and in the Shields litigation in the federal district court. Stanley, through its attorney Zaczek, filed a petition in June 2012, objecting to Bradley turning over any of Broaddus's assets (held by Bradley) to WMJ because Stanley claimed that Bradley erroneously failed to transfer those assets into Stanley's name. Broaddus signed an affidavit, which was attached to the petition, stating that he had asked Bradley to move the assets from his individual name into Stanley's name beginning some time "prior to" December 2010. That statement, however, was demonstrably false: public records from the state of Florida clearly indicate that Stanley had not been formed until December 9, 2010. More troubling is the persistence of this misrepresentation. As late as January 2011, Broaddus sent an e-mail to Ford, asking that distribution checks be held until Stanley was "official." Although Stanley did not file its petition until nearly a year and a half had passed, this false statement nonetheless figured prominently in its petition. These facts, among others, provided a sufficient basis for the court's finding that the petition was not well grounded in fact.

¶ 47    The petition was also not warranted by existing law or a good-faith argument for the modification of existing law. The petition asserted that WMJ's motion for turnover should be denied merely because Bradley had purportedly failed to honor Broaddus's request to transfer certain of his assets to Stanley. Broaddus's request, however, came at a time when Broaddus knew that he was a judgment creditor (in the Shields litigation) and the federal court had already rejected his attempt to transfer other assets to Stanley because the transfer would be fraudulent under the Act. Section 5(a)(1) of the Act plainly states that "A transfer made *** by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the

transfer was made ***, if the debtor made the transfer ***: with actual intent to hinder, delay, or defraud *any* creditor of the debtor." (Emphasis added.) 740 ILCS 160/5(a)(1) (West 2012).

¶ 48    The prior transfer of assets to Stanley was found to be fraudulent under the Act, so any subsequent transfer of assets from Bradley to Stanley would also be fraudulent as a matter of law. See *id.* Since all of this information was readily available from third parties, it was unreasonable for Zaczek to blindly rely upon his client Broaddus's representations. See *Edwards*, 235 Ill. App. 3d at 220. A reasonable inquiry of the facts and law that were readily apparent at the time the petition was filed would have revealed that the petition was objectively frivolous. Accordingly, there was no sound legal basis upon which to file the petition. Since the trial court's decision to impose sanctions is entitled to "significant deference" (*Petrik*, 2012 IL App (2d) 110495, ¶ 33), and we cannot hold that "no reasonable person would take the view adopted by [it]" (*id.* ¶ 19), the trial court's decision was not an abuse of discretion.

¶ 49    The trial court erred, however, in denying appellants' request to hold an evidentiary hearing regarding attorney fees. A party seeking an award of attorney fees has the burden to present enough evidence to enable a trial court to determine the reasonableness of the fees requested. *Kroot v. Chan*, 2017 IL App (1st) 162315, ¶ 37. Simply presenting the bills issued to the client or listing work hours multiplied by an hourly rate will not justify a fee award. *Id.* Instead, the fee petition must "*specify* the services performed," as well as the attorney who performed the services, the time expended, and the hourly rate charged. (Emphasis added.) *Id.* An evidentiary hearing is not always necessary in order to determine reasonable attorney fees if the trier of fact can determine a reasonable amount from the evidence presented, "*including a detailed breakdown to fees and expenses,*" and the party opposing the award is not denied an opportunity to present evidence. (Emphasis added.) *Id.* (citing *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 495-96 (1996)). Here, WMJ's petition for attorney fees includes an exhibit listing the time entries containing the date, the initials of the individual performing the service, the hourly rate charged, and, in some instances, a brief description of the services performed. We note, however, that some entries are opaque, such as, "Attention to status and strategy," or "Attend to status of turnover." Additionally, many entries refer to work performed outside the presence of the court. As such, the attached listing is an inadequate basis upon which to base an attorney fee award of nearly $75,000. See *id.* ¶ 38. Consequently, we vacate the circuit court's order of April 15, 2015, which awarded WMJ $74,578 in attorney fees and costs, and remand the matter to the circuit court with directions to hold an evidentiary hearing on WMJ's fee petition.

¶ 50                                  CONCLUSION

¶ 51    We affirm the circuit court's granting of WMJ's motion for sanctions, but we vacate the trial court's $74,578 award of April 15, 2015, in favor of WMJ and remand the cause to the circuit court for further proceedings consistent with this opinion. We dismiss the appeal from the order granting WMJ's motion for turnover because the notice of appeal was untimely filed. We also dismiss the appeal from the order granting Bradley's motion for sanctions because that order did not reduce Bradley's judgment to a specific dollar amount and was therefore not a final and appealable order.

¶ 52    Affirmed in part, vacated and remanded in part, and dismissed in part.